IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

|                                              |     |                              |
|----------------------------------------------|-----|------------------------------|
| GARRY L. PURKEY,                             | )   | CASE NO.  CV 04-0548-E-MHW   |
|                          Plaintiff,          | )   |                              |
| v.                                           | )   | **MEMORANDUM DECISION**      |
|                                              | )   | **AND ORDER**                |
| MARC RUBINO, an individual, and              | )   |                              |
| UNION PACIFIC RAILROAD                       | )   |                              |
| COMPANY, a Delaware corporation,             | )   |                              |
|                          Defendant.          | )   |                              |

Currently pending before the Court is Defendants Marc Rubino and Union Pacific Railroad Company's Motion for Summary Judgment (Docket No. 46) filed June 23, 2006; Defendants' Motion to Strike Declaration of David Tanner and Second Declaration of David Tanner (Docket No. 54) filed August 25, 2006; Plaintiff Garry Purkey's Motion to Compel Production of Documents (Docket No. 57) filed September 12, 2006; Defendants' Motion for Protective Order (Docket No. 65) filed September 28, 2006; Defendants' Motion to File Second Affidavit of Dominic A. Ring Under Seal (Docket No. 71) filed October 11, 2006; and Plaintiff's Motion for Leave to File Declarations Rebutting the 2nd Affidavit of Dominic Ring (Docket No. 80) filed November 9, 2006.  For the following reasons described in this Memorandum Decision and Order, Defendants' Motion for Summary Judgment is granted in part and denied in part;

**Memorandum Decision and Order - Page 1**

Defendants' Motion to Strike is denied; Plaintiff's Motion to Compel is denied; Defendants' Motion for Protective Order is granted; Defendants' Motion to File 2nd Affidavit of Dominic A. Ring Under Seal is granted; and Plaintiff's Motion for Leave to File Declarations is denied.

## I.
## Background

Plaintiff Garry L. Purkey ("Plaintiff") began working for Union Pacific Railroad Company ("UPRR") in 1981 and at the time of the incident in question he was working as a roadway equipment operator.  (Defendants' Statement of Undisputed Material Facts in Support of Motion for Summary Judgment, "Defendants' SUMF," Exhibit A, Deposition of Garry L. Purkey, "Purkey Dep.," at 5:24-6:19.)  For approximately nine months prior to the incident in question, Plaintiff served as the alternate local chairman for the Brotherhood of Maintenance of Way Employees ("the Union") in which his duties included going to investigations, writing up time claims, and interfacing with supervisors when he thought there was a rule violation or violation of the union agreement and trying to resolve those conflicts.  (Purkey Dep., at 10:16-12:8.)

On September 13, 2001, an Amtrak derailed near Winnemucca, Nevada.  (Purkey Dep., at 46:11.)  While at the Pocatello, Idaho tool house that morning, Plaintiff overhead a conversation on the radio between Walt Combs, Plaintiff's immediate supervisor, and Marc Rubino ("Rubino") who supervised both Plaintiff and Combs, in which they discussed assisting the derailment.  (*Id*. at 46:9-14.)  Combs and Rubino both arrived at the tool house shortly thereafter.  (*Id*. at 46:9-12.)  Rubino had been instructed by his superior to get a van and trailer down to assist the derailment.  (*Id*. at 60:1-4.)  Plaintiff heard Rubino order Combs to drive a van down to the derailment site to assist.  (*Id*. at 46:12-14.)

**Memorandum Decision and Order - Page 2**

Plaintiff approached[1] the two and suggested that a truck driver be requested to drive the van down instead of Combs.  (*Id*. at 46:19-25.)  Plaintiff's purpose for approaching was that, as local chairman of the Union, he believed there was about to be a rule violation - an employee working outside his work district.  (*Id*. at 58:13-14.)  However, employees are allowed to cross work districts in emergency situations, such as derailments.  (*Id*. at 59:21-25; *See* Defendants' SUMF, Ex. C.)  An argument ensued between Plaintiff and Rubino, including yelling but no abusive or threatening behavior.  (*Id*. at 47:1-16, 61:1-24.)

After the argument, Plaintiff called Mr. Larsen, the general chairman for the Union, and requested a conference between Rubino and himself because he was tired of arguing with Rubino.[2]  (*Id*. at 47:18-25.)  Plaintiff informed Rubino of his phone call to Mr. Larsen.  (*Id*. at 48:6-10.)  Shortly thereafter, Rubino pulled Plaintiff out of work stating that his boss told him to do so pending an investigation.  (*Id*. at 48:21-49:1.)  Later, Rubino did in fact send someone else who was properly qualified, and not Combs, to assist in the derailment.  (Rubino Dep., at 36:2-11.)

Plaintiff was charged with violating UPRR Rules 1.6, 1.7, 1.13 and 1.0, which include displaying quarrelsome behavior and engaging in insubordinate conduct.  There was a UPRR investigation and a hearing held.  (Purkey Dep., at 64:15-23.  *See* Defendants' SUMF, Ex. F.)  UPRR determined that Plaintiff violated these rules and he was assessed at Level 5 discipline which resulted in his removal from services on October 5, 2001.  (Defendants' SUMF, Ex. G.)  Under UPRR's formal discipline policy, known as UPGRADE, if there is found to be a Rule 1.6

---

[1]  Rubino claims Plaintiff "butted in." (Defendants' SUMF, Ex. D, Deposition of Marc Rubino, "Rubino Dep.," at 34:18-35:7. )

[2]  This was not the first argument between the two.

violation, it is an automatic Level 5 assessment which equals permanent dismissal.  *(See* Affidavit of Paul M. Dannelly, "Dannelly Aff.," Ex. 3.)  Rule 1.6 prohibits employees from being insubordinate or quarrelsome.  *(See* Affidavit of Dominic A. Ring, "Ring Aff.," ¶ 9.)  UPRR's UPGRADE policy defines insubordinate as "when an Employee's action or statements indicate a refusal (as opposed to a failure for cause) to carry out the instructions of a supervisor which are work, safety or policy related and which conform to accepted Company and industry practice, or when an employee demonstrates gross disrespect towards a supervisor."  (Dannelly Aff., Ex. 3.)  "Quarrelsome" is defined as "when an Employee's continued behavior is inclined or disposed toward an angry verbal confrontation with others in the work place."  (*Id.*)  Mr. Dannelly states in his affidavit that after reviewing and considering all testimony from the hearing held September 21, 2001, he determined that Plaintiff had violated the rules as charged and accordingly assessed the discipline at a Level 5.  (Dannelly Aff., ¶ 7.)  Plaintiff's termination was effective October 5, 2001.  Mr. Dannelly states his finding had nothing to do with Plaintiff's union activities.  (*Id.* at ¶ 11.)

Plaintiff appealed UPRR's decision to Public Law Board N. 6237, an arbitration panel. The issue before the Board was whether the record contained substantial evidence to sustain UPRR's determination that Plaintiff had violated the rules.  (Defendants' SUMF, Ex. B.)  On August 16, 2002, the Public Law Board determined that Plaintiff should be reinstated to his former employment status, with seniority and other rights of that status unimpaired, but without

back pay.  (*Id.*)  Prior to this, Plaintiff had rejected an offer for reinstatement after approximately 30 days of suspension.[3]

In August 2004, Plaintiff filed a Complaint against Defendants UPRR and Rubino (collectively, "Defendants") in the Sixth Judicial District, County of Bannock, State of Idaho which was removed to this Court by Defendants based on diversity jurisdiction in November of that same year.  (*See* Notice of Removal, Docket No. 1.)  Plaintiff had two causes of actions in his initial complaint:  1) that he was discharged by Defendants in violation of Idaho public policy and 2) that he was subjected to intentional or negligent infliction of emotional distress.  On April 27, 2005, the second aspect of Plaintiff's claim, the cause of action for intentional or negligent infliction of emotional distress, was withdrawn pursuant to a stipulation filed by the parties.  (*See* Stipulation, Docket No. 29.)

Defendants moved for Summary Judgment on June 23, 2006.  (Docket No. 46.)  They based their motion on several arguments, including: 1) Plaintiff's claim is preempted by the Railway Labor Act; 2) Plaintiff's claim for back pay and other damages for the time period between his termination and reinstatement cannot be relitigated, as the Public Law Board has already determined he was not entitled to back pay; and 3) Plaintiff cannot prove that UPRR or Rubino violated Idaho public policy.  A hearing was held on the Motion for Summary Judgment and several other motions that were pending at the time on October 24, 2006.  These other motions will be addressed first.

---

[3]  Plaintiff claims that to accept this offer he would have had to admit all the rule violations he was charged with.  He cites to the Declaration of David Tanner (Plaintiff's Response to Motion for Summary Judgment, Ex. C.) in support of this but the Court sees nothing in this Declaration that supports that statement of Plaintiff.

**Memorandum Decision and Order - Page 5**

## II.
### Plaintiff's Motion to Compel Production of Documents and Defendants' Motion for Protective Order

Plaintiff's Motion to Compel, brought under Federal Rules of Civil Procedure 26 and 37, is a result of what Plaintiff refers to as Defendant UPRR's "unequivocal blanket refusal to produce documents" of "comparables," i.e., other employees with equivalent "offenses" to that offered as an explanation for the event in question.  Plaintiff maintains that UPRR stated it will not produce records of other employees unless ordered to do so.  Defendants have not responded to Plaintiff's Requests for Production Numbers 2, 3, 5, 6 and 7 made on May 5, 2005.  (*See* Plaintiff's Motion to Compel Production of Documents, "Motion to Compel", Ex. A.)  The language of Requests for Production Nos. 3, 6, and 7[4] is as follows:

> Request No. 3: All documents pertaining to all other incidents involving confrontation, disagreement, or hostility between Rubino and any other employees (schedule or exempt), whether verbal or physical, on or off-duty, and regardless of subject matter.

> Request No. 6: All documents pertaining to confrontations between any schedule employee(s) with an exempt manager, verbal or physical, 1995-2005, including, inter alia, all documents pertaining to the handling of such incidents by way of warnings, record entries, discipline or other method, to <u>any</u> of those involved.

> Request No. 7: All documents pertaining to any other dismissals of any schedule or exempt employees in connection with confrontations, disagreements, or hostility between schedule employees and supervisor(s).

In response to Plaintiff's Motion, Defendants moved for a protective order.

(Defendants' Memorandum in Opposition to Motion to Compel and of Points and Authorities in Support of Motion for Protective Order, "Motion for Protective Order,"  Docket Nos. 65-67.)

---

[4]  Although Defendants did not answer Request Nos. 2, 3, 5, 6, and 7, Plaintiff only discusses Nos. 3, 6, and 7 in his Motion. Accordingly, the Court will only discuss those three production requests.

**Memorandum Decision and Order - Page 6**

Defendants certify that they have conferred in good faith with Plaintiff and attempted to explain to Plaintiff why the documents he seeks have no relation to his cause of action.

Defendants urge that discovery is not unlimited, parties are only required to produce information that is relevant to the underlying claim and they should not be forced to incur substantial expense or expend thousands of man-hours determining and providing information that is peripheral, at best, to a party's claim.  *See State Farm Mut. Auto. Ins. Co. v. Superior Court*, 804 P.2d 1323 (Ariz. Ct. App. 1991).

Defendants make five main points.  First, they argue that Plaintiff's Motion to Compel is untimely as it was filed almost fourteen months after receiving Defendants' discovery responses and *after* Defendants' Motion for Summary Judgment had been fully briefed.  Second, they submit that Plaintiff's Motion does not conform with Dist. Idaho Loc. Civ. R. 37.2 because it did not include a verbatim recitation of each request, response and objection that is the subject to the Motion and additionally, did not specify separately and with particularity each issue that remains to be determined at the hearing.  Third, Defendants argue that the requests are irrelevant as the relevancy of such materials is not apparent on their face and even *if* he is entitled to "comparables,"[5] Plaintiff has not limited his request to similarly situated comparables. Additionally, they submit that Plaintiff's claim is solely dependant on the facts and circumstances underlying Defendants' alleged actions and documents involving non-party employees who have had confrontations with UPRR managers have nothing to do with whether UPRR disciplined Plaintiff for his alleged union activities.  Fourth, Defendants urge that the

---

[5]  Defendants disagree with Plaintiff that his claim is similar to a Title VII or other federally protected right claim in which courts have allowed discovery into "comparables" because, as part of those causes of action, a plaintiff must prove he was treated differently than those who are "similarly situated"and thus discovery relating to such persons is permissible.

**Memorandum Decision and Order - Page 7**

requests are overly broad and unduly burdensome as the documents requested in Requests Nos. 6 and 7 span a ten-year period and potentially cover every UPRR employee. Defendants submit the Affidavit of Gail Young which outlines the specific burdens that compliance with Plaintiff's request would impose on UPRR in terms of time, expense and procedure. (*See* Defendants' Motion for Protective Order, Ex. B, Affidavit of Gail Young.) Fifth, and last, Defendants argue that the requests seek confidential information of non-party employees. The Defendants point out that courts generally recognize the sensitive nature of personnel records and express reluctance in their disclosure.

As to the privacy concern, Plaintiff points out he proposed a protective order in this case, obtained Defendants' consent and filed it. With regard to the reasonableness of his requests, Plaintiff maintains discovery is a work in progress and it is up to the responding party to respond with information and specify problems as to what documents have been maintained, on what subjects, or what is available. Regarding the relevance of the requests, Plaintiff argues that retaliatory discharge is actionable in nearly all states and the basic proof elements are similar to Title VII cases and thus comparable employees and circumstances are discoverable in this case just as they are in Title VII cases. As for timeliness, Plaintiff points out the case is months away from trial and that there has been no cut-off date set for non-dispositive motions.

Plaintiff proposes that UPRR must take reasonable steps to produce documents sufficient to enable Plaintiff to make what analysis can be made as to disparate treatment of comparable employees and circumstances and that Plaintiff must narrow and particularize his requests in order to accomplish the above without unnecessary use of non-party records or excessive cost to UPRR.

**Memorandum Decision and Order - Page 8**

Defendants submit that no matter how narrow or specific the request is made, the documents are not relevant to Plaintiff's violation of public policy claim because the analysis is not the same as a Title VII claim, in which a plaintiff must show that similarly situated employees were treated more favorably than he or she was in order to prove disparate treatment. Defendants maintain that Idaho has never applied a "disparate treatment" analysis to a public policy violation claim and even if it had, Plaintiff has not limited his request to similarly situated comparables.

Fed. R. Civ. P. 26(b)(1) states that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party....[f]or good cause, the court may order discovery of any matter relevant to the subject matter involved in the action." Fed. R. Civ. P. 37(a) provides that a "party, upon reasonable notice to other parties and all persons affected thereby, may apply for an order compelling disclosure or discovery..." Title VII and other disparate treatment cases have allowed discovery into personnel files because "civil discovery rules are to be construed liberally in Title VII cases in order to provide the plaintiff with broad access to employers' records." *Ladson v. Ulltra East Parking Corp.*, 164 F.R.D. 376, 378 (S.D.N.Y. 1996) (quoting *Wards Cove Packing Co., Inc. v. Atonio*, 490 U.S. 642 (1989)). *See also Orbovich v. Macalester College*, 119 F.R.D. 411 (D. Minn. 1988); *Griffith v. Wal-Mart Stores, Inc.*, 163 F.R.D. 4 (E.D. Ky. 1995). Discovery is typically allowed into "comparables" in Title VII and like cases because the fourth element to prove a prima facie case under Title VII is that "similarly situated" employees received more favorable treatment. *See Moran v. Selig*, 447 F.3d 748, 755 (9th Cir. 2006). Plaintiff here is not alleging a Title VII violation but instead wrongful discharge in violation of public policy.

Defendants have moved for a protective order pursuant to Fed. R. Civ. P. 26(c), which states that "[u]pon motion by a party....and for good cause shown, the court....may make an order which justice requires to protect a party or person from...embarrassment,...undue burden or expense...that certain matters not be inquired into, or that the scope of the disclosure or discovery be limited to certain matters."

In *Sorosky v. Burroughs Corp.*, a terminated worker brought an action against a former employer alleging breach of contract and wrongful discharge because when the facility he worked at was closed, he was then assigned to a temporary position at another facility and that temporary assignment ended, leaving him unemployed. 826 F.2d 794 (9th Cir. 1987). Plaintiff moved to compel the production of certain documents relating to defendant's policies for discharging employees, its reasons for closing facilities and statements concerning employment security. *Id*. at 805. Defendant produced documents relating only to its two facilities that plaintiff had worked at, arguing that documents relating to its other facilities worldwide would be irrelevant and unnecessarily burdensome to produce. *Id*. The district court denied plaintiff's motion to compel because the requests were unduly burdensome and overly broad. *Id*. The Ninth Circuit affirmed the district court's denial of plaintiff's motion because his lawsuit focused on his employment, which occurred only at two facilities and he did not make a specific showing that the burdens of production would be minimal and that the requested documents would lead to relevant evidence. *Id*.

Even in Title VII cases and other employment discrimination cases, courts have not given unfettered access to personnel records. *See Pacheco v. Mineta*, 448 F.3d 783, 793 (5th Cir. 2006) (upholding denial of employee's broad discovery request for information on all

promotions extending back five years before the policy of which he complained was implemented, noting it was a broad and largely irrelevant discovery request); *Sallis v. Univ. of Minn.*, 408 F.3d 470, 477-78 (8th Cir. 2005) (university employee's request for information on every allegation of employment discrimination against university, by all complainants in all departments, was overly broad and unduly burdensome in Title VII action). *See also Balderston v. Fairbanks Morse Engine Div. of Coltec Industries*, 328 F.3d 309 (10th Cir. 2003); *Knoll v. AT&T Co.*, 176 F.3d 359 (8th Cir. 1999). As well, before such documents are compelled, the party seeking them must show that the information in the files is relevant and if the relevant information can be obtained through less intrusive means, then personnel files will not be produced. *See Raddatz v. The Standard Register Co.*, 177 F.R.D. 446 (D. Minn. 1997).

Plaintiff does not have to prove disparate treatment by comparison to similarly situated employees, as he would were this a Title VII case. If Plaintiff proves by a preponderance of the evidence that he was terminated in violation of public policy, he would be entitled to relief. It is not an element of his cause of action that other similarly situated employees were not terminated, and therefore he was treated differently. Put another way, Plaintiff does not have to prove in this case that he was terminated in violation of public policy and/or he was subject to disparate treatment by his employer.

Additionally, the Court would like to note its concern regarding the untimeliness of Plaintiff's Motion to Compel. Plaintiff filed this Motion approximately fourteen months after receiving the Defendants' responses to his Request for Production of Documents and nearly three months after the Defendants' Motion for Summary Judgment had been filed. For the

foregoing reasons, the Court will deny Plaintiff's Motion to Compel and grant Defendants'

Motion for Protective Order.

### III.
### Defendants' Motion to Strike

Defendants have moved to strike the Declarations of David Tanner ("Declarations") that

Plaintiff has attached to his Response to the Motion for Summary Judgment. (Docket No. 50) on

the grounds that they do not comply with Federal Rule of Civil Procedure 56(e), specifically that

they: (1) are not made on personal knowledge, particularly because Mr. Tanner is not a UPRR

employee; (2) do not set forth facts that would be admissible in evidence because they lack

foundation, are conclusory, and lack factual support; and (3) do not set forth specific facts

showing that there is a genuine issue for trial.

Plaintiff responds that Mr. Tanner's statements do have foundation based on his twenty-

four years of experience in interacting with UPRR concerning collective bargaining agreements

and disciplinary manners.  He submits a Third Tanner Declaration to cure any foundational

deficiencies that may exist in the first two.  Plaintiff also argues that Mr. Tanner's declarations

are admissible under Fed. R. Evid. 406, addressing habit and routine practice, and Fed. R. Evid.

701, dealing with opinion testimony of lay witnesses.

Federal Rule of Civil Procedure 56(e) states, in pertinent part, that "[s]upporting and

opposing affidavits shall be made on *personal knowledge*, shall set forth such facts as would be

*admissible in evidence*, and shall show affirmatively that the affiant is competent to testify to the

matters stated therein." (Emphasis added).  Plaintiff is entitled to submit affidavits on his behalf

in an attempt to defeat a motion for summary judgment; in fact, he is compelled to do so by Fed.

R. Civ. P. 56(e) in order to be successful.  *See Celotex Corp. v. Citrate*, 477 U.S. 317 (1986), and

*British Motor Car Distributors, Ltd. v. San Francisco Automotive Industries Welfare Fund*, 882 F.2d 371 (9th Cir. 1989).

Rule 56(e) requires that affidavits filed in connection with motions for summary judgment be made on personal knowledge. *DePinto v. Provident Security Life Ins. Co.*, 374 F.3d 50, 55 (9th Cir. 1967). As such, hearsay testimony and opinion testimony that would not be admissible if testified to at trial would not be properly set forth in such an affidavit. *Id.* Facts alleged on understanding, such as on belief or on information and belief, are not sufficient to create a genuine issue of fact. *Cermetek, Inc. v. Butler Avpak, Inc.*, 573 F.2d 1370, 1377 (9th Cir. 1978). A motion for summary judgment will not be defeated by mere conclusory allegations unsupported by factual data. *Seattle-First Nat'l Bank v. United States*, 653 F.2d 1293, 1299 (9th Cir. 1981).

There is considerable merits to Defendants' arguments to strike Mr. Tanner's Declarations. Fed. R. Evid. 602 and 701 exclude affidavits of witnesses who are not experts if they lack of personal knowledge. *See Visser v. Packer Eng'g Assoc., Inc.*, 924 F.2d 655, 659 (9th Cir. 1991). Testimony about matters outside personal knowledge is not admissible and if it is not admissible at trial, it is not admissible in an affidavit to support or resist the grant of summary judgment. *Id*; *see also Stagman v. Ryan*, 176 F.3d 986, 995 (7th Cir. 1999). Additionally, Fed. R. Evid. 406, by its terms, only allows routine practice evidence to be admissible to prove conduct in conformity with that routine practice, whereas Plaintiff wants to show conduct *not* in conformity with routine practice. Regardless of the merits of Defendants' arguments, the Court does not find it necessary to strike these Declarations as they did not play a

significant role in the Court's analysis for summary judgment purposes, as will be discussed in more detail later.

## IV.
### Defendants' Motion to Seal Second Affidavit of Dominic A. Ring

Defendants filed a Motion to File Second Affidavit of Dominic A. Ring ("Second Ring Affidavit") Under Seal (Docket No. 71).  The Second Ring Affidavit is submitted as an exhibit to Defendants' Reply Memorandum in Support of Motion to Strike Declaration of David Tanner and Second Declaration of David Tanner and it contains information and has attached documents relating to employees and/or former employees of UPRR who are not parties in this case. Defendants urge that this affidavit should be kept confidential and used only within the confines of this litigation.  Being no opposition to this Motion by the Plaintiff, the Second Ring Affidavit will be sealed.

## V.
### Plaintiff's Motion for Leave to File Declarations
### Rebutting the Second Affidavit of Dominic Ring

Subsequent to the October 24, 2006 hearing, Plaintiff filed a Motion for Leave to File Declarations Rebutting the Second Affidavit of Dominic Ring ("Second Ring Affidavit") (Docket No. 80).  As stated in the previous section, this Second Ring Affidavit was attached as an exhibit to Defendants' Reply Memorandum in Support of Motion to Strike Declaration of David Tanner and Second Declaration of David Tanner (Docket No. 70).  The affidavit was filed along with a motion to seal it because of the confidential employee information it contained. Unfortunately, Plaintiff's counsel was unable to read the Second Ring Affidavit until after the October 24, 2006 hearing.  Plaintiff's counsel argues that had he been able to review this affidavit prior to the October 24, 2006 hearing, he would have provided rebuttal affidavits as he

maintains he had until the day prior to the hearing to respond.  He submits that he agreed to allow the affidavit to be sealed at the hearing because he assumed that if he needed, he would be able to file documents in rebuttal once he did in fact read the affidavit.  Plaintiff also maintains that these additional declarations are necessary to evaluate the "significant, likely determinative fact issue" of the standard practices in situations like the one that occurred between Plaintiff and Rubino in this case.

Defendants urge that Plaintiff's first argument is without merit as the District of Idaho Local Civil Rules do not allow a responding party to reply to a reply brief, and the Second Ring Affidavit was filed in conjunction with the reply on their Motion to Strike.

The Court agrees with Defendants that under the Local Rules, a responding party is not entitled to "respond" or "reply" to a reply of the moving party.  The Second Ring Affidavit was filed with the Defendants' reply on their Motion to Strike.  Even if Plaintiff's counsel had been able to access the Second Ring Affidavit, he would not have been entitled to file a "rebuttal," or essentially a reply to a reply.  There is nothing in the Local Rules that allows such a practice.  Additionally, the issue before the Court is to determine whether any fact issues exist that preclude summary judgment, not to actually decide those factual issues at this time.  Accordingly, the Court denies Plaintiff's Motion.

### VI.  Defendants' Motion for Summary Judgment

### A.      Standard of Review

Motions for summary judgment are governed by Federal Rule of Civil Procedure 56.  Rule 56, which provides in pertinent part, that judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).

When reviewing a motion for summary judgment, the proper inquiry is whether "the

pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, show that there is no genuine issue as to any material fact and that the moving party is

entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c) (1993).  A moving party who

does not bear the burden of proof at trial may show that no genuine issue of material fact remains

by demonstrating that "there is an absence of evidence to support the non-moving party's case."

*Celotex Corp v. Catrett*, 477 U.S. 317, 325 (1986).  Once the moving party meets the

requirement of Rule 56 by either showing that no genuine issue of material fact remains or that

there is an absence of evidence to support the non-moving party's case, the burden shifts to the

party resisting the motion who "must set forth specific facts showing that there is a genuine issue

for trial."  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986).  It is not enough for the

[non-moving] party to "rest on mere allegations or denials of his pleadings."  *Id.*  Genuine

factual issues must exist that "can be resolved only by a finder of fact because they may

reasonably be resolved in favor of either party."  *Id.,* at 250.

"When determining if a genuine factual issue . . . exists, . . . a trial judge must bear in

mind the actual quantum and quality of proof necessary to support liability."  *Id.,* at 254.  "The

mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient;

there must be evidence on which the jury could reasonably find for the plaintiff."  *Id.* at 252.

The Ninth Circuit has consistently applied the standard for granting summary judgment. *Musick v. Burke,* 913 F.2d 1390 (9th Cir. 1990); *Pelletier v. Federal Home Loan Bank,* 968 F.2d 865 (9th Cir. 1992); *Bieghler v. Kleppe,* 633 F.2d 531 (9th Cir. 1980).

In determining whether a material fact exists, facts and inferences must be viewed most favorably to the non-moving party.  To deny the motion, the Court need only conclude that a result other than that proposed by the moving party is possible under the facts and applicable law.  *Aronsen v. Crown Zellerbach,* 662 F.2d 584, 591 (9th. Cir. 1981).

The Ninth Circuit has emphasized that summary judgment may not be avoided merely because there is some purported factual dispute, but only when there is a "genuine issue of material fact."  *Hanon v. Dataproducts Corp.,* 976 F.2d 497, 500 (9th Cir. 1992).  The Ninth Circuit has found that in order to resist a motion for summary judgment, the non-moving party:

> (1) must make a showing sufficient to establish a genuine issue of fact with respect to any element for which it bears the burden of proof; (2) must show that there is an issue that may reasonably be resolved in favor of either party; and (3) must come forward with more persuasive evidence than would otherwise be necessary when the factual context makes the non-moving party's claim implausible.

*British Motor Car Distrib. Ltd. v. San Francisco Automotive Indus. Welfare Fund,* 882 F.2d 371, 374 (9th Cir. 1989).

**B.     Preemption Under the Railway Labor Act**

Defendants argue that Plaintiff's claim is preempted by the Railway Labor Act ("RLA") as the RLA establishes a mandatory arbitration process for any adjudication of a dispute that grows out of "grievances or out of the interpretations or application of agreements," which are termed "minor disputes."  *See* 45 U.S.C. § 153(i); *Consolidated Rail Corp. v. Railway Labor Executives' Assoc.*, 491 U.S. 299 (1989).  Defendant submits that once a National Railroad

Adjustment Board ("NRAB") or Public Law Board ("PLB") makes a finding, it becomes the final and exclusive remedy under the RLA. Defendants maintain that this case involves minor disputes and thus is subject to the mandatory arbitration process. First, they argue this is a "minor dispute" because the case involves a determination of whether Plaintiff justifiably accused Rubino of violating the collective bargaining agreement ("CBA"), implicating Rule 24(c) of the CBA. Second, it is a "minor dispute" because the CBA provides for when an employee can be pulled from service, implicating Rule 48(o) of the CBA. Lastly, Defendants argue that Plaintiff's wrongful discharge determination is intertwined with the grievance mechanisms of the CBA and RLA because Plaintiff was subject to those mechanisms during the investigation and termination process and any issues he has with his treatment during that process implicates Rule 48(n) of the CBA.

Plaintiff cites to a decision from the Supreme Court in support of the proposition that a plaintiff can sue in court under a whistleblower act even though plaintiff had previously arbitrated his dismissal under a collective bargaining agreement based on the same facts. *See Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246 (1994); *see also Magnuson v. Burlington Northern, Inc.*, 576 F.2d 1367 (9th Cir. 1978). Plaintiff argues that he was compelled to arbitrate his termination under the CBA since that was the proper forum to determine if his dismissal for allegedly violating various UPRR rules was supported by substantial evidence. He submits that the term "wrongful" was never used in the arbitration and neither was the issue of whether his role as alternate local chairman was the reason for his termination. He further maintains that a state law cause of action is not preempted by the RLA if it involves rights and obligations that exist independent of the CBA. *See Hawaiian Airlines v. Norris*, 512 U.S. 246 (1994). Plaintiff

**Memorandum Decision and Order - Page 18**

also points out that there many procedural due process deficiencies in the RLA system, including lack of procedures and evidence rules, no contempt and subpoena powers, and lack of discovery procedures.

Defendants reply that *Hawaiian Airlines* stands for the proposition that a state law action for wrongful discharge can be brought when it can be decided wholly apart from the provisions of the CBA.  Defendants argue that Plaintiff puts the CBA into play by virtue of his allegations and thus his state employment rights are in fact pre-empted by the RLA because the state right is intertwined with the CBA.

The RLA establishes a mandatory arbitration process for two classes of disputes: major and minor.  Minor disputes develop out of "grievances or out of the interpretation or application of agreements covering rates of pay, rules or working conditions."  45 U.S.C. § 151a; *Hawaiian Airlines v. Norris*, 512 U.S. 246, 252-53 (1994); *Fennessy v. Southwest Airlines*, 91 F.3d 1359, 1361 (9th Cir. 1996).  Minor disputes seek to enforce existing contractual rights and involve controversies over the meaning of an existing collective bargaining agreement in a particular fact situation.  *Hawaiian Airlines v. Norris*, 512 U.S. 246, 253 (1994).  The United States Supreme Court interpreted the word "grievances" from the RLA statute to mean disagreements over how to give effect to a CBA or disputes involving the application or interpretation of a CBA.  *Id*. at 254-55.  Minor disputes are subject to the binding arbitration of the NRAB or PLB and those entities have exclusive jurisdiction over such disputes.  *Consolidated Rail Corp. v. Railway Labor Executives' Assoc.*, 491 U.S. 299, 303 (1989).  Judicial review of decisions resulting from arbitration are limited.  *Id*. at 304.

**Memorandum Decision and Order - Page 19**

Additionally, it has been held that the RLA's mandatory arbitration requirements do not preempt causes of action to enforce rights that are independent of the CBA. *Hawaiian Airlines v. Norris*, 512 U.S. 246, 256 (1994).  If there is a substantive protection provided by state law, it is not preempted by the RLA. *Id*. at 257.  If the *only* source of a wrongful termination claim is the CBA itself, then the RLA will preempt it. *See Andrews v. Louisville & Nashville R. Co.*, 406 U.S. 320 (1972) ("[I]t is conceded by all that the *only* sources of [Andrews'] right not to be discharged, and therefore to treat an alleged discharge as a wrongful one that entitles him to damages, is the collective-bargaining agreement between the employer and the union" (emphasis added)).  In contrast, in *Hawaiian Airlines*, the CBA was not the only source of plaintiff's right not to be wrongfully discharged. *Id*. at 258.  Instead, in that case, plaintiff had an independent source for his cause of action under state tort law; that is, the state law obligation "not to fire [plaintiff] in violation of public policy or in retaliation for whistle-blowing." *Id*. at 258.  Purely factual questions relating to an employee's conduct or an employer's conduct and motives do not require a court to interpret any collective-bargaining agreement. *Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399, 407 (1988).  In *Fennessy*, the Ninth Circuit held that the Adjustment Board's decision was binding on the plaintiff with regard to what it decided, that his termination did not violate the CBA. *Fennessy v. Southwest Airlines*, 91 F.3d 1359, 1361-62 (9th Cir. 1996).  That court then went on to recognize that because the plaintiff did not seek review of the Board's decision but instead brought a claim pursuant to an independent statutory provision, his claim was not a "minor dispute" under the RLA and thus could be heard in a federal court. *Id*. at 1362.  This was true even despite the fact that his termination could be grieved on contractual grounds as well. *Id*.  If there is a cause of action to enforce rights that are

independent of the CBA, it will not be preempted by the RLA's arbitration process for minor disputes. *Id. See also* cases collected at 30 C.J.S. *Employer Employee Relationship* § 68 (2006) (collective bargaining agreements do not preempt claims that a discharge was in violation of public policy).

In accordance with the above authority the Court finds that this case does not involve an interpretation of the CBA and thus is not preempted by the RLA. Plaintiff has an independent state right, i.e., not to be terminated in violation of public policy because of engagement in protected union activities, and therefore this claim is not preempted by the RLA. Plaintiff's claim does not rely on the interpretation of the CBA. It focuses on whether Plaintiff was terminated for the wrong reason, i.e., in violation of public policy.

**C.    Issue Preclusion Based on Decision of Public Law Board**

Defendants argue that Plaintiff cannot relitigate the issue of whether he is entitled to back pay for the time he was dismissed because it was already litigated by the PLB and it determined he was not entitled to back pay. Defendants submit that the PLB's decision cannot be retried on the merits and that a court's review of the PLB's decision is limited to three specific grounds: "(1) failure of the [PLB] to comply with the requirements of the [RLA]; (2) failure of the [PLB] to conform, or confine, itself to matters within the scope of its jurisdiction; and (3) fraud or corruption." *Edelman v. Western Airlines, Inc.*, 892 F.2d 839, 842 (9th Cir. 1989) (quoting *Union Pacific Railroad Co. v. Sheehan*, 429 U.S. 89, 93 (1978)).

Defendants maintain that since the PLB already determined that Plaintiff was not entitled to back pay, Plaintiff is collaterally estopped from relitigating that issue. *See Summerville v. Trans World Airlines, Inc.*, 219 F.3d 855 (8th Cir. 2000) (finding that issue preclusion applied

and deferred to a Board's fact-finding because the Board had exclusive statutory authority to

decide disputes regarding the interpretation and application of the CBA).  Defendants submit that

Plaintiff was given notice and a hearing regarding the charges brought against him for violating

UPRR rules.  They contend he arranged for multiple witnesses to testify on his behalf and

present other evidence, and that he had a full and fair opportunity to cross-examine the witnesses

presented by UPRR.  Plaintiff then appealed this decision to the PLB who had access to the

transcripts of the hearing and positions papers submitted by both sides.  Since the PLB

determined that Plaintiff was not entitled to back pay, Defendants urge he is barred from

relitigating that issue in this Court.[6]  Defendants additionally submit that all of the damages

Plaintiff seeks in this action are for the time period in which he was unemployed, including

alleged 401(k) losses, unpaid medical bills, and loss of vacation, personal and safety days, and

since the PLB has already determined that Plaintiff is not entitled to damages accrued during

those eleven months he did not work, Plaintiff is barred from seeking those damages in this

action.

  Plaintiff answers that the United States Supreme Court has held that an arbitrator's

decision did not have preclusive effect on a Title VII suit, although they involved virtually the

---

[6] Defendants cite to another decision from this Court where the plaintiff appealed UPRR's decision to terminate him for failing to disclose information regarding his history of seizures to the Special Board of Adjustment claiming that UPRR was attempting to charge him "with dishonesty when in fact it dismissed him because he has epilepsy or a seizure disorder."  The Board determined that plaintiff was guilty of violating the rule but that he should be reinstated, without back pay.  Plaintiff's complaint filed in this Court alleged the same thing as his appeal to the Board - that he was discharged because of his disability.  The Court determined that since this suspension had already been reviewed by the Board and that the suspension was warranted by plaintiff's violation of the rules, the Board's determination on these issues was not reviewable.  The Court held that "only...those claims and issues presented to and necessarily determined by the Board are not reviewable in this judicial forum."  *Mancini v. UPRR*, Case No. CV 01-467-E-BLW (2002).  However, this Court find that *Mancini* is distinguishable from the instant case since Mancini raised the same issue on appeal to the Board as he did in his complaint, that he was fired because of his disability, whereas the Plaintiff here did not raise his union activities as an issue on appeal to the PLB but did raise them in his complaint to this Court.

same claim. *See Alexander v. Gardner-Denver Co.*, 415 U.S. 3 (1974). Plaintiff additionally

cites to a Seventh Circuit case in which an RLA arbitral award did not have preclusive effect in

subsequent judicial proceedings on a Federal Employers' Liability Act (FELA) claim. *See*

*Kulavic v. Chicago & Illinois Midland and Railway Co.*, 1 F.3d 507, 520 (7th Cir. 1993.)

      Plaintiff argues that he did not waive any potential violation of public policy cause of

action by appealing the dismissal to the PLB because the assertion he is making in this case, that

he was really terminated because of union activities, was never raised in the arbitration

proceeding. He claims that the PLB made no finding as to any material fact issue of this claim.

Plaintiff further argues that if he can prove his claim of termination in violation of public policy

in this action, then back pay would be an appropriate remedy. This is independent of whether

the PLB thought that back pay should have been part of the award to the Plaintiff when they

found that Plaintiff's dismissal was too harsh of a remedy for a violation of UPRR rules not to be

quarrelsome with his supervisor. The Court agrees with Plaintiff that there are two different

issues: what was presented to the arbitration panel and what would be presented to a jury.

      Issue preclusion will bar relitigation of issues actually adjudicated in previous litigation

between the same parties when the party invoking issue preclusion shows three things: (1) the

issue at stake is identical to an issue raised in the prior litigation; (2) the issue was actually

litigated in the prior litigation; and (3) the determination of the issue in the prior litigation was a

critical and necessary part of the judgment in the earlier action. *Littlejohn v. United States*, 321

F.3d 915, 922 (9th Cir. 2003).

      When a claim is brought pursuant to or arising from a CBA provision and there has

already been a binding arbitration regarding that CBA provision, then that issue is precluded.

*See Union Pacific Railroad Co. v. Price*, 360 U.S. 601 (1959) (dismissal of plaintiff's claim that he was wrongfully dismissed in violation of a CBA was warranted as his termination had already been challenged on the same grounds before the NRAB, and thus that same issue was precluded from being relitigated); *Summerville v. Trans World Airlines*, 219 F.3d 855 (8th Cir. 2000) (plaintiff was precluded from relitigating issues regarding certain job requirements as that involved the interpretation and application of a CBA and the very same grievance has already been heard in front of an arbitration board).

However, when a claim is brought pursuant to an outside statute or arises from another independent source, then the claim is not precluded even if there was a previous arbitration.  *See Barrentine v. Arkansas-Best Freight System, Inc.*, 450 U.S. 728 (1981) (holding that courts should defer to an arbitral decision where the employee's claim is based on rights arising out of the collective-bargaining agreement, but not when the employee's claim is based on rights arising out of a statute designed to provide minimum substantive guarantees to individual workers); *Alexander v. Gardner-Denver Co.*, 415 U.S. 36 (1974) (allowing plaintiff to bring a Title VII claim in a federal court even though he had previously arbitrated the issue under a nondiscrimination clause of a CBA because arbitration is not the appropriate forum for final resolution of rights created by Title VII); *McDonald v. City of West Branch, Michigan*, 466 U.S. 284 (1984) (in a § 1983 action, the U.S. Supreme Court would not afford collateral estoppel or res judicata to an award in an arbitration proceeding brought pursuant to terms of a CBA); *Kulavic v. Chicago & Illinois Midland and Railway Co.*, 1 F.3d 507 (7th Cir. 1993) (held an arbitral award by the PLB should not be given preclusive effect in plaintiff's subsequent FELA action because the arbitration board's review could not adequately protect rights set forth in

FELA); *and Graves v. Burlington Northern and Santa Fe Railway Co.*, 77 F. Supp. 2d 1215

(E.D. Okla. 1999) (a previous disciplinary hearing conducted pursuant to the RLA and a CBA

did not bar plaintiff's FELA action.)  From this survey of cases implicating similar issues, it

appears that when the CBA provision has already been litigated in an arbitration and then again

challenged in a judicial proceeding, the arbitration decision is binding on the subsequent

litigation; but, when the subsequent litigation deals with a right *outside* the CBA, even though

the same factual issues may have been the basis for a claim under the CBA, the previous

arbitration does not necessarily preclude subsequent litigation.  Accordingly, the Court does not

find issue preclusion to foreclose any of the issues at stake in this case.

**D.**      **Termination in Violation of Public Policy**

      Defendants argue that Plaintiff cannot prove that Idaho public policy was violated.

Employees who are at will can be terminated at any time for any reason.  The public policy

exception to this rule states that an employer can be liable for wrongful discharge when the

motivation for discharge contravenes public policy.  *See Ray v. Nampa Sch. Dist. #13*, 120 Idaho

117, 814 P.3d 17 (1991).  Defendants maintain that the public policy exception does not apply,

and thus Plaintiff has no claim, for three reasons.  First, they argue that this exception does not

apply to work place conditions, referring to Plaintiff's allegations that UPRR retained a "bully."

Second, Defendants argue that Plaintiff is not at will because he has the protections of the CBA

and thus the public policy exception does not apply to him.  Third, they argue that Plaintiff

cannot prove he was fired for his affiliation with the Union.  The Defendants contend that

because the PLB did not find that Plaintiff was discharged for union activity, there is no factual

basis for Plaintiff's claim that he was really fired because of his duties as local alternate chairman.

Plaintiff submits that under the public policy exception, he needs to show that he was engaged in protected activity and that activity played a substantial part in Defendants' motive for dismissing him.  He maintains that there is a material issue of disputed fact on this point as to the real reasons behind his dismissal.  Further, the Idaho Supreme Court has declared that union activities are protected under the public policy exception.  *See Watson v. Idaho Falls Cons. Hosp. Dists.*, 111 Idaho 44, 702 P.2d 623 (1986).

Plaintiff urges that there is enough facts to support his claim: he informed Rubino he was going to call the Union on him, within 15 minutes Plaintiff was suspended from work, within two days there was a disciplinary investigation and then he was eventually terminated.  As there are ample fact issues, Plaintiff submits that this case is not appropriate for summary judgment.

Defendants reply that Plaintiff must show he was dismissed because of union activity. Since the PLB found Plaintiff's dismissal was in accord with UPRR's disciplinary policy, UPRR argues that Plaintiff he will be unable to prove otherwise.  Also, Defendants argue that Plaintiff had the opportunity to present his case at the hearing and that hearing resulted in a determination that Plaintiff had violated Rule 1.6 which assessed him at a Level 5 discipline, completely in accordance with UPRR's UPGRADE policy.  Defendants urge that Plaintiff simply has no proof that his discharge had anything to do with his union involvement.  They refer to a Seventh Circuit case in which the court described UPRR's disciplinary policy, confirmed that a violation of Rule 1.6 is assessed at a Level 5 discipline and results in dismissal, and explained that the policy does not allow for consideration of prior work history, discipline or injuries when

considering a Level 5 infraction.  *See Jones v. Union Pacific Railroad Co.*, 302 F.3d 735 (7th

Cir. 2002).  Defendants also submit that the case goes on to say that the actual issue was whether

UPRR honestly believed reports of its officers.[7]  Defendants submit that in this case there is

nothing in the record to show that UPRR's action was based on Plaintiff's alleged union

activities as Mr. Dannelly stated he believed Rubino's report that Plaintiff had interfered and

UPRR followed its own internal grievances thereafter.

Idaho law is well established that when employment is at-will, the employment

relationship may be terminated at any time for any or no reason, so long as that reason does not

violate public policy.  *See Ray v. Nampa Sch. Dist. #13,* 120 Idaho 117, 814 P.3d 17 (1991);

*MacNeil v. Minidoka Memorial Hosp.*, 108 Idaho 588, 701 P.2d 208 (1985); *Jackson v.*

*Minidoka Irrigation Dist.*, 98 Idaho 330, 563 P.2d 54 (1977).  Unless an employee is hired

pursuant to a contract which specifies the duration of the employment or limits the reasons why

the employee may be discharged, the employee is at-will.  *Thomas v. Medical Center Physicians*,

138 Idaho 200, 206, 61 P.3d 557, 563 (2002)**.**  Such a contract may be express or implied and an

employee's handbook can constitute an element of the contract.  *Harkness v. City of Burley*, 110

Idaho 353, 356, 715 P.2d 1283, 1286 (1986).

In order for the public policy exception to apply, the discharged employee must: (1)

refuse to commit an unlawful act; (2) perform an important public obligation; or (3) exercise

---

[7]  In that case, a black railroad employee was dismissed for gross insubordination and quarrelsome behavior.  The employee later filed a Title VII claim based on racial discrimination. The Seventh Circuit agreed that plaintiff failed to establish a prima facie case for discrimination because UPRR gave a non-discriminatory reason for terminating him - insubordination and quarrelsome behavior.  The burden then shifted to the plaintiff to establish that the employer's reason was false and that the actual reason was discriminatory.  Since the plaintiff could not show that UPRR's interpretation and application of company policy was improper or that the company's explanation was dishonest, the Court upheld summary judgment.  However, that case involved the familiar *McDonnell Douglas Corp. v. Green*, 411 U.S. 811 (1973) burden shifting method to establish a prima facie case which does not apply in the context of a claim for violation of public policy.

certain rights or privileges. *Thomas v. Medical Center Physicians*, 138 Idaho 200, 208 (2002).

The court in that case stated that once the court defines the public policy, it is a question for the

jury whether the public policy was violated. *Id*. at 209.  The Idaho legislature has declared the

public policy of Idaho as follows:

> Negotiation of terms and conditions of labor should result from
> voluntary agreement between employer and employees.
> Governmental authority has permitted and encouraged employers
> to organize in the corporate and other forms of capital control. In
> dealing with such employers the individual unorganized worker is
> helpless to exercise actual liberty of contract and to protect his
> freedom of labor, and thereby to obtain acceptable terms and
> conditions of employment. Therefore *it is necessary that the
> individual workman have full freedom of association,
> self-organization, and designation of representatives of his own
> choosing, to negotiate the terms and conditions of employment,
> and that he shall be free from the interference, restraint or
> coercion of employers of labor*, or their agents, in the designation
> of such representatives or in self-organization or in other concerted
> activities for the purpose of collective bargaining or other mutual
> aid or protection.
> IDAHO CODE § 44-701 (emphasis added); *see Watson v. Idaho
> Falls Cons. Hosp. Dists.*, 111 Idaho 44, 49 (1986).

In *Watson v. Idaho Falls Cons. Hosp. Dists.*, the Idaho Supreme Court held that a trial

court did not err in instructing a jury on plaintiff's theory of termination in violation of public

policy for her pro-union activities.  *Id*. at 48.  However, that court stated that while other courts

had recognized that discharge because of union activity and/or membership offends principles of

public policy, it had not decided that precise question because it did not find it necessary at that

time.  *Id*. at 49.  But in a later case, the Idaho Supreme Court stated that an employee's allegation

that her termination was in retaliation for union activities, if true, would constitute a violation of

public policy.  *Roberts v. Board of Trustees, Pocatello, Sch. Dist. No. 25*, 134 Idaho 890, 893, 11

P.3d 1108, 1111 (2000).  The Idaho Supreme Court also stated that an employee must provide

more than a mere allegation regarding a public policy violation.  *Id*.  The alleged facts must

present more than a scintilla of evidence supporting the defendant party's position.  *Ray v.*

*Nampa Sch. Dist. #13*, 120 Idaho 117, 121 (1991).  In *Ray*, the court found that summary

judgment was inappropriate on the issue of whether plaintiff was fired in violation of public

policy because his affidavit stated he learned his employment was terminated because he had

reported certain safety code violations to the state electrical engineer and the Director of

Services for the school district stated that plaintiff was fired because he had made contact with

the state electrical engineer.  *Id*.

In this case, the Court does not agree with Defendants' characterization of Plaintiff's

claim as one regarding "work place conditions."  Plaintiff's claim is for termination of

employment in violation of public policy, not termination because of adverse work conditions.

Although Plaintiff does mention the workplace conditions in his complaint, that is not the true

essence of his claim and thus such an argument by Defendants will not preclude summary

judgment.

Secondly, the Idaho cases that address the public policy exception have addressed it in

terms of at-will employment.  However, the *Watson* case discussed the public policy exception

in the context of a hospital employee whose employment was covered by a contract which

limited the reasons for which she could be terminated.  *Watson v. Idaho Falls Cons. Hosp.*

*Dists.*, 111 Idaho 44, 47 (1986).  Plaintiff's union status is similar to the employee *Watson*, and

since the Idaho Supreme Court held that termination of an employee covered by an employment

contract, if in violation of public policy, would support a cause of action, the Court finds the

same reasoning would apply to this case.  Additionally, it appears Idaho does protect union

**Memorandum Decision and Order - Page 29**

activity under the public policy exception.  *See Roberts v. Board of Trustees, Pocatello, Sch. Dist. No. 25*, 134 Idaho 890, 893 (2000).

As for Defendants' third argument that Plaintiff cannot prove his cause of action, that is not the question now before the Court.  The question before the Court is whether there are genuine issues of material fact precluding summary judgment.  The Court believes there are. While Plaintiff's evidence may not be that strong, when the facts are liberally construed towards him, as the non-moving party, there is enough for him to survive summary judgment as to Defendant UPRR.

Defendants address Rubino separately.  They argue that Rubino did not begin the argument on September 13, 2001, that it was Plaintiff who started what became a yelling match. Furthermore, they argue that Rubino was not the decision maker, it was Rubino's superiors who pulled Plaintiff from service and ultimately terminated him and thus Plaintiff cannot maintain a claim against Rubino for violating Idaho public policy.  The Court agrees that while Rubino made the complaint that started the process, the rest of the decisions and suspensions were made by the UPRR management.  Therefore the Motion for Summary Judgment will be granted as to Rubino.

## ORDER

Based upon the foregoing, the Court being otherwise fully advised in the premises, the Court **hereby ORDERS that:**

1)      Defendants' Motion for Summary Judgment (Docket No. 46)  filed June 23, 2006, is **DENIED** as to Union Pacific Railroad Company and **GRANTED** as to Marc Rubino;

2)      Defendants' Motion to Strike Declaration of David Tanner and Second Declaration of David Tanner (Docket No. 54)  filed August 25, 2006, is **DENIED**;

**Memorandum Decision and Order - Page 30**

3)      Plaintiff's Motion to Compel Production of Documents (Docket No. 57) filed

September 12, 2006, is **DENIED**;

4)      Defendants' Motion for Protective Order (Docket No. 65) filed September 28,

2006, is **GRANTED;**

5)      Defendants' Motion to File Second Affidavit of Dominic A. Ring Under Seal

(Docket No. 71) filed October 11, 2006, is **GRANTED**; and

6)      Plaintiff's Motion for Leave to File Declarations Rebutting the Second Affidavit

of Dominic Ring (Docket No. 80) filed November 9, 2006, is **DENIED**.

DATED: December 4, 2006

_____
Honorable Mikel H. Williams
United States Magistrate Judge

**Memorandum Decision and Order - Page 31**